Defendant admitted that the first tract had been sold by him and Powell, but alleged that the purchase money not having been paid according to the contract, a suit was instituted, judgment recovered, and the two tracts levied on under an execution, sold to him, and a deed made by the sheriff to him, and of the record and deed due proof was made. Plaintiff then said that in avoidance of defendant's title he meant to contend that the sale was irregular in having been made without forty days' notice, and that this irregularity was known to the defendant when he purchased, to which facts he offered witnesses. A question being made by defendant as to the relevancy of such testimony, the court held that if it were proved that defendant knew of the irregularity, it would not vitiate the sale; such irregularity was a question between the owner of the land and the sheriff; but that if from such knowledge of the defendant the jury could infer a fraudulent combination between him and the sheriff, it would make the sale void.
Witnesses were then examined on the part of plaintiff, from whose testimony it appeared that a day was appointed for the sale, of which more than forty days' notice had been (365) given; that on the day appointed, one Smith attended, either as the friend or agent of Jones, the plaintiff in this case, and declared his intention of bidding for the land to the amount of the execution; and who, when no sale did take place, expressed a desire that he might be informed when the sale thereafter would take place, that he might be present. The sheriff at this time was not present, in consequence of which the sale was postponed, but it was not adjourned to any future time. Fulgham, the defendant, was present. *Page 267 
About eight or ten days afterwards a person who was a surety for Jones in the purchase of the land, and a defendant in the execution, met the deputy sheriff, who told him that he meant to advertise the land again and sell it in about fifteen days from that time; the surety said it would be illegal, and begged the officer not to do so, being, as he said, very anxious that a sale should be legally effected in order that he might be secured, and being fearful that if it were not so effected he might be compelled to pay the money; the officer, however, disregarded his request, saying that he knew the law on the subject as well as any person; and accordingly he then wrote advertisements appointing the sale as he said he would do. Fulgham was not present at this conversation.
When the day of sale arrived this witness again attended; there were present eight or ten persons, among whom was Fulgham; the witness repeated to the officer his disapprobation of the proceeding, but he did not know whether Fulgham heard him. Smith was not present at the sale.
Two or three persons bid for the land, and the last and highest bidder was one Harwell, to whom it was knocked off at much less than the amount of the debt, and who when applied to by the officer for the purchase money, said he had bid for Fulgham, which assertion the latter, coming up at the time, affirmed, saying, "It is all fixed." The deed was accordingly made to Fulgham.
Harwell, the bidder, was called as a witness, and swore (366) that he was requested by Fulgham to bid for him, but Fulgham did not assign any reason for the request. The defendant called other witnesses who swore that he was afflicted with a malady at the time, which compelled him frequently to retire. Harwell did not make known that he was bidding for Fulgham, until the sheriff applied to him for payment.
The court charged the jury that the opinion expressed by the court on a question made at the opening of the evidence, on that question, continued unaltered, viz., that defendant's knowledge of the irregularity of the sale would not avoid it; and stated that it seemed to the court, however, that the question of law did not arise in the case, because defendant's knowledge was not proved; that according to the testimony of plaintiff's principal witness, the sheriff himself did not know that he was acting improperly. He did not put it upon the footing, "I know it is wrong, but I will nevertheless do it; but I think it is right, and therefore I will do it," and to suppose that the defendant was apprised of the irregularity, when the sheriff was not, would be to impute to the former, without any apparent *Page 268 
cause, more legal skill as to the sheriff's duty than he possessed himself. That on the whole cause the court held the law to be:
1. That supposing it proved that Fulgham knew the irregularity of the sale, it would not vitiate his title.
2. That if the jury could collect from the testimony satisfactory evidence of a fraudulent combination between the sheriff and Fulgham, that
would vitiate the title of the latter.
3. That if Fulgham constituted Harwell his agent in good faith, to bid for him, and recognized his acts, it was equivalent to bidding himself; bidding being an act which a man may do as well by an agent as in person. In such case, the deed to Fulgham was valid and transferred the title.
There was a verdict for the defendant, and plaintiff (367) moved for a new trial on the ground of misdirection by the court:
1. In stating that defendant's knowledge of the irregularity of the sale did not per se vitiate the sale, though it would be a circumstance among others (if proved to exist) to show a fraudulent combination between the sheriff and purchaser.
2. In stating to the jury that even if the circumstance of knowledge could affect the purchaser, the plaintiff had not proved facts on which that question could arise.
3. In stating to the jury that the deed to Fulgham transferred the title.
A new trial was refused, and the plaintiff appealed.
The motion for a new trial is made upon a supposed misdirection of the judge below; and the two last reasons may be comprised in one.
As to the first, it has been repeatedly held in this Court that a purchaser at execution sale is not affected by the irregularity of the advertisement, and that point may now be considered as put at rest; and as to the other, the law very clearly is that fraud and combination between the sheriff and the purchaser will render void a sale, whether regularly or irregularly made; for it is not the external form and ceremony that is alone to give validity to the transaction, but it must be accompanied with a proper motive, and not with a view to contravene the design which the law intended from the act to be done.
And though it be true that it belongs to the jury alone to weigh the evidence, yet it is equally true that it is the province of the court to determine whether the evidence offered is conducive to prove the fact. The jury are to hold the scales, but the court must determine upon the admissibility of everything that is to be cast into them. The eyes of the jury are exclusively *Page 269 
confined to the beam, the eyes of the court to the scales; the court is to determine what the jury is to weigh, the jury are to pronounce what it does weigh. Whether any evidence has been given is, therefore, the peculiar province (368) of the court to determine.
I concur in omnibus with the opinion of the judge below, and the rule for a new trial should be discharged.
The other judges concurring. Rule discharged.